**UNITED STATES of America,**

v.

**John F. "Duffy" CONLEY, William C. Curtin, Sheila F. Smith, John Francis "Jack" Conley, Thomas "Bud" McGrath, Mark A. Abbott, Thomas Rossi, William Steinhart, Roberta Fleagle, Robin Spratt, Monica C. Kail, William J. Reed, Joanne T. Smith, Kenneth "Ron" Goodwin, Lawrence N. "Neudy" Demino, Sr., Christopher "Chris" Kail, Joseph A. Devita, Frank Garofalo, Thomas D. Ciocco, Michael Sukaly, Phillip M. "Mike" Ferrell, Anestos "Naz" Rodites, and William E. Rusin, Defendants.**

**Crim. No. 91–178.**

United States District Court, W.D. Pennsylvania.

June 30, 1994.

---

854

Frederick W. Thieman, U.S. Atty. for the W.D. Pa., James R. Wilson, Asst. U.S. Atty. for the W.D. Pa., William D. Braun, Crim. Div., U.S. Dept. of Justice, Washington, DC, for plaintiff.

James Wymard, William Difenderfer, Anthony Mariani, Ellen Viakley, Gary Gerson, Caroline M. Roberto, Joel Johnston, Stanley Greenfield, Martha Bailor, Ray Radokovich, Carmen Martucci, Lee Markovitz, Edward J. Osterman, William Acker, Foster Stewart, Joseph Kanfoush, Carl Max Janavitz, Raymond M. Maloney, John Goodrich, Gary B. Zimmerman, Vincent Baginski, John Zagari, James Andring, Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

### INTRODUCTION

Before the Court are numerous motions raising issues relating to the federal searches conducted on December 19, 1989: John Francis "Jack" Conley's Omnibus Pretrial Motion: Motion to Suppress Physical Evidence [1989 searches] (Document No. 374, in part); Pretrial Motions of John F. "Duffy"

Conley: Motion to Suppress [12/19/89 searches, including 1989 searches of locations as listed in Document No. 826, at 10–11] (Document No. 377, in part); Sheila Smith's First Supplemental Motion to Suppress Physical Evidence (930 Saw Mill Run) [1989 search] (Document No. 448, in part); and John Francis "Jack" Conley's Motion to Suppress Oral Statement (Document No. 450). Also implicated in the federal searches of December 19, 1989 is Defendant John F. "Duffy" Conley's Motion to Suppress Evidence (Document No. 832), which seeks to suppress evidence that is tainted by his suppressed statement of October 30, 1989. *See United States v. Conley*, 859 F.Supp. 847, 853 (W.D.Pa. 1994) (Document No. 921) (deferring analysis of taint arising from inclusion of the substance of the suppressed statements in the affidavit of probable cause for searches).[1]

All of the searches and seizures on December 19, 1989 were conducted pursuant to warrants issued on the basis of a single master affidavit.[2] As the affiant on the master affidavit was FBI Special Agent John Donnelly ("S.A. Donnelly"), and there are other master affidavits in the record, the December 19, 1989 master affidavit will be referred to as the "Donnelly affidavit."

■ John Francis "Jack" Conley ("Jack Conley") challenges all of the federal searches conducted on December 19, 1989. Although he is conceded to have "standing" to challenge the federal search of the premises of 930 Saw Mill Run Boulevard, the record does not reflect his standing to challenge any other search.[3] Without regard to any taint from his suppressed statements, John F. "Duffy" Conley ("Duffy Conley") has "standing" to challenge the seizure and search of his poker machines because of his ownership interests in the machines and his reasonable expectation of privacy in the internal compartments of the machines.[4] Duffy Conley's "standing" is limited to those locations from which video poker machines of which he has

---

1. Two additional motions listed in General Order of Court No. 19: Memorandum Scheduling Order: ¶ (13) e. & f. will be disposed of by the Order of Court accompanying this Memorandum Opinion. Defendant John F. "Duffy" Conley has conceded that he lacks standing to challenge the seizure of Pittsburgh National Bank records of his accounts. Defendant John F. "Duffy" Conley's Omnibus Brief in Response to the Court's General Order No. 19, at 16 (Document No. 898). The Pretrial Motions of John F. "Duffy" Conley: Motion to Suppress [bank records & FBI subpoenas] (Document No. 377, in part) will be denied on that basis. In addition, the Pretrial Motions of John F. "Duffy" Conley: Motion to Suppress Oral Statements [12/19/89 statement] (Document No. 377, in part) will be denied as moot, for Duffy Conley made no statement on December 19, 1989.

2. The Government has not introduced any evidence of probable cause to seize poker machines in plain view except for the affidavit of probable cause for the warrants that in fact were issued.

3. Likewise, there remain pending various motions to join in the motions before the Court, but the record reflects a lack of standing with respect to all the joining Defendants. The motions to join will be denied on that basis.

4. The Court has previously summarized its analysis as follows:

In prior proceedings, the Court ruled that Defendant John F. "Duffy" Conley ("Duffy Conley") had Fourth Amendment interests that were implicated by seizures and searches of video poker machines from "locations"—bars, delicatessens, coffee shops, etc.—in which Duffy Conley had no reasonable expectation of privacy. *United States v. Conley*, 856 F.Supp. 1010, 1014–1022 (W.D.Pa.1994) (Document No. 801). Specifically, the Court held that Duffy Conley's ownership of the video poker machines, which the Court assumed for purposes of its decision, was an interest protected from unreasonable seizures by the Fourth Amendment. *Id.*, 856 F.Supp. at 1019, 1020, 1022. The Court indicated that although the Fourth Amendment does not require a warrant to seize property in an unprotected area, it does require probable cause to seize without a warrant. The Court presumed that the Government would attempt to show probable cause to seize the machines through the warrants that were in fact issued for the eighty-odd locations. *Id.*, 856 F.Supp. at 1020 & n. 7. Further, the Court held that Duffy Conley had a reasonable expectation of privacy in the inside compartments of the video poker machines, *id.*, 856 F.Supp. at 1019, 1020–1022, necessitating a valid warrant or warrant-exception before the compartments properly could be invaded by law enforcement personnel.
*United States v. Conley*, 856 F.Supp. 1034, 1036 (W.D.Pa.1994) (Document No. 900).

claimed ownership for purposes of pretrial motions were seized. *See* Document No. 826.[5]

Defendants Duffy Conley, Jack Conley and Sheila Smith have standing to challenge the December 19, 1989 search of the 930 Saw Mill Run premises. Duffy Conley has standing to challenge the search of the 3100 Windgap Avenue premises. Further, Duffy Conley has standing to challenge the probable cause upon which his video poker machines were seized and the warrants pursuant to which they were searched. *See supra,* note 4. Jack Conley, of course, has standing to move to suppress his own statement, which is averred to be involuntary and, in addition, tainted by the alleged illegality of the December 19, 1989 search of the Saw Mill Run premises.

The Court has suppressed Duffy Conley's October 30, 1989 statement at the Main Hotel. As to Duffy Conley, the Government concedes that all reference to the statement must be stricken from the Donnelly affidavit, upon which all the warrants executed on December 19, 1989 were issued.

Because Duffy Conley has "standing" to challenge every search that is subject to challenge by any Defendant, the Court first will review the Donnelly affidavit, but with all reference to the suppressed statements excised, to determine if such probable cause remains that a neutral magistrate would have issued the subject warrants. Only if the Court concludes that probable cause is lacking in the modified Donnelly affidavit will the Court review the Donnelly affidavit as written to determine if the issuing authority had a substantial basis for concluding that evidence of a crime would be found at each of the locations searched. Finally, whatever the outcome of the preceding two inquiries, the Court will address the motion to suppress Jack Conley's December 19, 1989 statements.

## SEARCH AND SEIZURE

### The Donnelly Affidavit

On December 19, 1989, United States Magistrate Judge Ila Jeanne Sensenich signed search warrants for fifteen retail business establishments, fourteen vehicles, two trailers and two offices/warehouses on the basis of the facts contained in the Donnelly affidavit. The Donnelly affidavit itself is a one-hundred page document, with an additional twenty-one page expert's affidavit incorporated by reference.

The following is a brief summary of the information in the Donnelly affidavit. S.A. Donnelly prepared the affidavit on the basis of his personal knowledge, conversations with FBI agents, Pennsylvania State Police officers and City of Pittsburgh Police officers, a review of FBI reports, Pennsylvania State Police reports and City of Pittsburgh Police reports, a review of a taped conversation between City of Pittsburgh Police officer Reyne Kascuta and William C. Curtin, the expert opinion of William L. Holmes, and a review of the records of an Allegheny County Investigative Grand Jury.

The Government, in its proposed findings of fact has described the affidavit as including more or less thirteen categories of information. The first four categories relate federal statutory and case law and state statutory and case law with respect to video poker machines and gambling. The fifth category describes the operation of video poker machines as gambling devices and refers the reader to the expert's affidavit of William L. Holmes. The sixth category of information includes a detailed description of the operation of Duffy's Vending, a/k/a Three Rivers Coin, as an illegal gambling business. The

---

**5.** Pursuant to Document No. 826, Duffy Conley and the Government have stipulated, for purposes of pretrial proceedings, that Duffy Conley was the owner of the video poker machines seized at the following "locations:" 1. Idlewood Inn, GOV'T 16; 2. Jim's News Stand, GOV'T W–25; 3. Coffee Pot Restaurant, GOV'T 17; 4. The Coffee Shop, GOV'T 18; 5. Jack's Deli & Restaurant, GOV'T W–24; 6. Kail's Coffee Shop, GOV'T W–26; 7. Original Snack Shop, GOV'T W–28; 8. Sunny Farms Deli, GOV'T 19; 9. American Legion Post # 82, GOV'T W–23; 10. Terry's Snack Shop, GOV'T 20; 11. Pine Hollow Country Dairy/Isaly's, GOV'T W–30; 12. Original Snack Shop, GOV'T W–29; 13. Main Hotel Restaurant & Lounge, GOV'T W–27; 14. Wise's Lounge, GOV'T W–31. The stipulation also covers video poker machines seized at 930 Saw Mill Run Boulevard, GOV'T 22, and 3100 Windgap Avenue, GOV'T 21.

seventh type of information relates the taped conversation between Reyne Kascuta, an undercover City of Pittsburgh Police officer posing as a location owner, and William C. Curtin, the general manager of Duffy's Vending/Three Rivers Coin, as Curtin gave his "pitch" to the officer. Eighth, the affidavit relates the substance of Duffy Conley's now-suppressed October 30, 1989 statements. Ninth, the affidavit indicates that Curtin had stated that Duffy Conley drives a Chevrolet sedan equipped with three phones and that his car is his office. Tenth, the affidavit indicates that Duffy Conley, William Curtin and Three Rivers Coin maintain two headquarters: the Windgap premises and the Saw Mill Run premises. Eleventh, the affidavit describes the "establishments" or "stops" (which will be referred to hereafter in this Memorandum Opinion as "locations") at which Three Rivers Coin maintained video poker machines. Twelfth, the affidavit indicates that from several sources the affiant had confirmed that the video poker machines at the locations named in the affidavit are maintained by Duffy Conley, Curtin and Three Rivers Coin. Thirteenth, the affidavit indicates that investigation within the seven preceding days had revealed that the machines at the listed locations were operational and available to the public. The affidavit also indicates that, on the basis of the expert's affidavit, the types of machines being employed had been transported in whole or in part in interstate commerce. The affidavit then summarized by location the investigative activities of law enforcement personnel. The affidavit concludes by indicating that location operators maintain independent records of pay-offs, etc.

The foregoing summary, of course, cannot do justice to the information included in the Donnelly affidavit's combined 121 pages. As necessary to address the Defendant's challenges, the Court will cite specifics of the Donnelly affidavit.

**Standard of Review for Excised Affidavits**

■ When a court reviews an affidavit from which unconstitutionally seized evidence has been excised, it must independently determine if such probable cause remains within the affidavit that a neutral magistrate would have issued the subject warrants. *See United States v. Herrold*, 962 F.2d 1131, 1143 (3d Cir.1992); *see also id.* at 1144. If such probable cause remains, the fruits of the searches conducted pursuant to the hypothetical modified affidavit come from a source independent of the constitutional violation, and the fruits of the searches are not tainted fruits of the poisonous tree. *Herrold*, 962 F.2d at 1140–44.[6]

■ Probable cause is to be determined under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The determination of probable cause entails "a practical, common sense decision whether, given all the circumstances set forth in the affidavit ... including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

■ The Court of Appeals for the Third Circuit has recently summarized the law regarding the age or "staleness" of information contained in an affidavit of probable cause. The Court of Appeals stated:

Age of the information supporting a warrant application is a factor in determining probable cause. *See United States v. Forsythe*, 560 F.2d 1127, 1132 & n. 6 (3d Cir.1977); *see also United States v. McNeese*, 901 F.2d 585, 596 (7th Cir.1990). If too old, the information is stale, and probable cause may no longer exist. *McNeese*, 901 F.2d at 596. Age alone, however, does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts

---

**6.** In a previous Memorandum Opinion, the Court determined that Duffy Conley's suppressed statement did not motivate the government's investigation of him or its decision to search and seize pursuant to the Donnelly affidavit. *United States*

*v. Conley*, 859 F.Supp. 847, 852–53 & n. 3 (W.D.Pa.1994) (Document No. 921). Thus, the only issue remaining before the Court is the question of probable cause. *Cf. Herrold*, 962 F.2d at 1144.

relied on and the issuance of the warrant." *United States v. Williams,* 897 F.2d 1034, 1039 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). Rather, we must also examine the nature of the crime and the type of evidence. *See United States v. Tehfe,* 722 F.2d 1114, 1119 (3d Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984); *Forsythe,* 560 F.2d at 1132; *see also United States v. McCall,* 740 F.2d 1331, 1135–36 (4th Cir.1984).

*United States v. Harvey,* 2 F.3d 1318, 1322 (3d Cir.1993); *see also United States v. Stiver,* 9 F.3d 298, 300–01 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1115, 127 L.Ed.2d 425 (1994).

### The Saw Mill Run Premises

■ Duffy Conley contends that the Donnelly affidavit fails to establish probable cause to search the Saw Mill Run premises because it fails to state any relevant information indicating that evidence of gambling would be found on the premises. Specifically, the warrant mentioned video poker machines, but the Donnelly affidavit included no facts to justify a conclusion that video poker machines would be found on the premises. Duffy Conley contends that the only mention of the Saw Mill Run premises was included at page 62 of the Donnelly affidavit, which states "The evidence indicates that John 'Duffy' Conley, William J. [sic] Curtin and Three Rivers Coin Company maintain two headquarter offices and warehouses for their illegal gambling business," Donnelly affidavit at 62, and names the Saw Mill Run premises and the Windgap premises as the two headquarters. Duffy Conley contends that no factual information supports this conclusion with respect to the Saw Mill Run premises.

The Court concludes that the Donnelly affidavit provided probable cause to search the Saw Mill Run premises. The warrant does reference video poker machines, but it also includes numerous other categories of evidence and items to be seized. In its brief, the Government summarized the evidence related in the Donnelly affidavit regarding the Saw Mill Run premises as follows:

With respect to the [Saw Mill Run premises], the affidavit states that the administrative office of Duffy's Vending was located at 930 Saw Mill run and certain employees of Duffy's Vending were located there. [Donnelly Aff.] at 21, 39, 41. At this location on September 23, 1988, the City of Pittsburgh Police seized contracts signed by Duffy's Vending specifying the locations of the poker machines owned by Duffy's Vending. *Id.* at 21. Video poker machines were kept here. *Id.* at 24. Daily work assignments are dispatched by radio and/or telephone from this location. *Id.* at 21–22, 40. Money Collected from the video poker machines is delivered to either Helen (last name unknown), Sheila Smith or John Conley, Sr. here. *Id.* at 22, 26, 39. This is the location where the "collectors" give their "codes" to Sheila Smith and where the collection slips are received. *Id.* at 38–40. Sheila Smith, who was in charge of the books and paying the bills for Duffy's Vending/Three Rivers Coin Company, worked here. *Id.* at 41. Helen Grosskopf, who prepared the "daily report" for Duffy's Vending concerning how much money was collected on a particular route and deposits made [sic], worked here. *Id.* at 39–40. This is the location where all but one of the vehicles observed at 3100 Windgap are registered with the Pennsylvania Department of Motor Vehicles. *Id.* at 64–65. "All of the financing" for three Rivers Coin Company is done here. *Id.* at 66. This is the location where the City of Pittsburgh Police seized the personnel and business records of Duffy's Vending and at which business letterheads were located that describe Duffy's Vending as "[a] complete line of modern poker machines" located at "930 Saw Mill Run Boulevard." *Ibid.*

Government's Response to General Order of Court No. 19 Paragraph (13), at 6–7 (Document No. 907). The Donnelly affidavit contains an abundance of information indicating that the Saw Mill Run premises was an integral part of the illegal gambling business reflected in the Donnelly affidavit and that there was a fair probability that the items sought would be found on the Saw Mill Run premises.

### RUN–303

■ Duffy Conley further contends that the search of his personal car, license number RUN–303, was not supported by probable cause.[7] The Court finds that the Donnelly affidavit contains probable cause to search his vehicle. The Donnelly affidavit contains the statements of Curtin to a newspaper reporter that Duffy Conley drove a Chevrolet sedan equipped with three telephones and that he worked out of his car. Other information throughout the affidavit indicates that Conley travelled extensively in the operation of his business. Notwithstanding the fact that the affidavit identifies four Chevrolet vehicles in association with Conley's operation, only RUN–303 was registered to Duffy Conley personally. Given such information, there was a fair probability that the items sought in the warrant were evidence of an illegal gambling business and would be found in RUN–303.[8]

### Staleness and Probable Cause

As to the remainder of the challenged warrants, Duffy Conley submits only his general contentions that the warrant contained stale information. He states, "Viewing the affidavit as a whole, the majority of the affidavit contains information which is either stale or insufficient to support probable cause." Defendant John F. "Duffy" Conley's Omnibus brief in Response to the Court's General Order of Court No. 19, at 36.

■ Undoubtedly, the Donnelly affidavit contains information of substantial age, but that is not determinative. There is also substantial information included in the Donnelly affidavit that is fresh. What matters is that the Donnelly affidavit includes information indicating that there is, and has been, an ongoing gambling operation, violating 18 U.S.C. § 1955 and 15 U.S.C. § 1172, and that there is a fair probability that the fruits, instrumentalities, and evidence of such crimes, and/or contraband, sought by the warrants may be found in the places to be searched. *Cf. United States v. Conley,* 856 F.Supp.

1034, 1045 (W.D.Pa.1994). The Court has reviewed each of the challenged warrants and concludes that the Donnelly affidavit provides probable cause for each warrant.

In the Donnelly affidavit with all references to Duffy Conley's suppressed October 30, 1989 statement excised, a neutral magistrate would find probable cause to issue the subject warrants. The taint from the suppressed statements is eliminated with the Court's excising the suppressed statements, and the evidence seized pursuant to the excised Donnelly affidavit comes from a source independent of the unconstitutionally coerced statements.

As the Court noted in the Introduction, Jack Conley and Sheila Smith face a heavier burden in challenging the warrant for the Saw Mill Run premises. Their additional burden is two-fold: First, as to them the warrant includes Duffy Conley's suppressed statements; second, the warrant is analyzed as it was submitted to the Magistrate Judge and is subject to a more deferential standard of review—whether the Magistrate Judge had a substantial basis for concluding that probable cause existed. *United States v. Conley,* 4 F.3d 1200, 1204–05 (3d Cir.1993). The Court has found that Duffy Conley cannot meet his lighter burden. *A fortiori,* Jack Conley and Sheila Smith cannot successfully challenge the probable cause upon which the warrant issued for the Saw Mill Run premises.

Defendant John F. "Duffy" Conley's Motion to Suppress Evidence (Document No. 832), as well as John Francis "Jack" Conley's Omnibus Pretrial Motion: Motion to Suppress Physical Evidence [1989 searches] (Document No. 374, in part); Pretrial Motions of John F. "Duffy" Conley: Motion to Suppress [12/19/89 searches, including 1989 searches of locations as listed in Document No. 826, at 10–11] (Document No. 377, in part); and Sheila Smith's First Supplemental

---

7. Though warrants were issued for the search of thirteen other vehicles, Duffy Conley has not challenged, or pressed his standing to challenge, those searches.

8. The Magistrate Judge struck video poker machines from the items to be seized. GOV'T 26, at Attachment # 1 ¶ 1.

Motion to Suppress Physical Evidence (930 Saw Mill Run) [1989 search] (Document No. 448, in part), will be denied.

JACK CONLEY'S

DECEMBER 19, 1989 STATEMENT

Findings of Fact

1. Around noon on December 19, 1989, FBI Special Agent Jeff Troy ("S.A. Troy"), City of Pittsburgh Police Detective John Bosetti and two IRS agents arrived at the Saw Mill Run premises to execute a search warrant.

2. The officers walked around to the back of the premises, and opened the unlocked back door. They walked through a storage room and went through a door into the first floor office space.

3. After entering the first floor office space, the officers identified themselves and displayed their credentials and a copy of the search warrant. S.A. Troy proceeded to read the search warrant to Jack Conley.

4. S.A. Troy told Jack Conley that S.A. Troy would like to ask Jack Conley questions but that he did not have to submit to an interview or answer questions.

5. S.A. Troy told Jack Conley that he was not under arrest and could leave if he so chose.

6. Jack Conley agreed to be interviewed.

7. S.A. Troy interviewed Jack Conley while both were seated at or near Jack Conley's desk in the first floor office space.

8. S.A. Troy did not inform Jack Conley of his *Miranda* rights.

9. Jack Conley was asked to review and sign a consent form authorizing a search of trailers on the Conley Motor Freight property. He refused to sign the form after reviewing it.

10. Nonetheless, Jack Conley gave his permission to the agents to search the trailers.

11. One of the two women who were working at the Saw Mill Run premises left for lunch and did not return from lunch.

12. None of the officers restricted Jack Conley's movement in any way. S.A. Troy never said or did anything to prevent Jack Conley from leaving the premises.

13. None of the officers engaged in any threatening or intimidating behavior.

14. Jack Conley felt pressure to consent to an interview from the mere presence of the officers executing the search warrant. Other than the mere presence of the officers, Jack Conley testified to no source of pressure or coercion.

15. Jack Conley was in fact free to decline to engage in conversation and to leave at any time.

16. No officer made any threat or promise of any kind to Jack Conley.

17. No officer told Jack Conley that what he said would not be used to incriminate him. Jack Conley never asked if his statements would be used against him. He never indicated that he did not wish to answer questions or to answer questions in the absence of some form of immunity.

Discussion

A. Miranda Rights

 If a person in custody is to be subjected to interrogation, he must be informed in clear and unequivocal terms, that he has the right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966). Advisement of Constitutional rights set forth in *Miranda*, is required only when a suspect is in custody. *California v. Beheler*, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 494–95, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977). A person is "in custody" when the police have formally arrested the person or have restricted his or her freedom in any significant way. *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520; *Mathiason*, 429 U.S. at 494, 97 S.Ct. at 713; *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Whether police have restricted a person's freedom of action in any significant way is determined by considering the totality of the circumstances. *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520.

■ Although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint from freedom of movement" of a degree associated with a formal arrest. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714.

■ "[A] person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

### B. Voluntariness

■ Statements not obtained in violation of a person's *Miranda* rights or right to counsel are nonetheless subject to suppression as violative of due process if the statements are "coerced" or "involuntary." *Arizona v. Fulminante,* 499 U.S. 279, 288–91, 111 S.Ct. 1246, 1253–54, 113 L.Ed.2d 302 (1991); *Lego v. Twomey,* 404 U.S. 477, 483, 92 S.Ct. 619, 623, 30 L.Ed.2d 618 (1972). A statement is coerced or involuntary if the behavior of "law enforcement officials was such as to overcome the will to resist and bring about a confession not freely self-determined." *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1960). Coercive police activity is a necessary predicate to finding a confession involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986). There must be some causal connection between the police conduct and the confession. *Id.* at 164, n. 1, 107 S.Ct. at 520, n. 1. It is the government's burden to show by a preponderance of the evidence that the challenged statements are voluntary. *Lego,* 404 U.S. at 483, 92 S.Ct. at 623. The ultimate issue of voluntariness, however, is a question of law for the Court. *Fulminante,* 499 U.S. at 286, 111 S.Ct. at 1252.

■ The Court must examine the totality of the circumstances in order to determine if a confession was coerced or involuntary. *Schneckloth v. Bustamonte,* 412 U.S.

218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). In determining whether the defendant's will was overborne in a particular case, a court must assess the totality of all the surrounding circumstances, both the characteristics of the accused and the details of the interrogation. *Schneckloth,* 412 U.S. at 266, 93 S.Ct. at 2067. For example, a court should look to the following:

> the youth of the accused; his lack of education or low intelligence; the lack of any advice to the accused of his Constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as deprivation of food or sleep.

*Id.,* 412 U.S. at 226, 93 S.Ct. at 2047. It is well established that an involuntary confession may result from psychological, as well as physical, coercion. *Miller v. Fenton,* 796 F.2d 598, 603 (3d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986).

Jack Conley contends that his statements must be suppressed because they are fruit of the poisonous tree, he was subjected to custodial interrogation without being informed of his *Miranda* rights and his statements were involuntary and coerced.

First, there is no poisonous tree of which Jack Conley's statement could be the fruit. The Court has found that the search warrant for the December 19, 1989 search issued upon probable cause, and Jack Conley has pressed no other grounds to invalidate the search.

■ Second, under the totality of the circumstances, Jack Conley was not in custody. The officers did not formally arrest Jack Conley, nor did they impose any restriction upon movement, let alone restricts of a type associated with formal arrest. Under the totality of the circumstances, a reasonable person would have felt free to leave the premises, as several others in fact did.

■ Third, Jack Conley's statements were not coerced or involuntary within the meaning of the due process clause. The only element of subjective pressure identified by Jack Conley was the mere presence of the

officers. Jack Conley in fact refused to sign the consent form for the searches of the trailers in the parking lot. Thus, he knew that the mere presence of the officers was not grounds to submit to their every whim. Jack Conley was not youthful or so uneducated in the ways of the world that the mere presence of the officers executing the search warrant would overbear his will. Not only is Jack Conley competent enough to run his own trucking company, he had experience in having his premises searched by law enforcement authorities. He was present during the raid on the Saw Mill Run premises on September 23, 1988. Under the totality of the circumstances, Jack Conley's will was not overborne by the presence of the officers and S.A. Troy's questioning on December 19, 1989.

John Francis "Jack" Conley's Motion to Suppress Oral Statement (Document No. 450) will be denied.

An appropriate order will be entered.

### ORDER OF COURT

AND NOW, this 30th day of June, 1994, upon consideration of the foregoing Memorandum Opinion, it is hereby ORDERED AS FOLLOWS:

(1) Defendant John F. "Duffy" Conley's Motion to Suppress Evidence (Document No. 832), to the extent that it was deferred by paragraph 2 of the Order of Court dated June 30, 1994 (Document No. 921), is DENIED;

(2) The motions to join in John Francis "Jack" Conley's Omnibus Pretrial Motion: Motion to Suppress Physical Evidence [1989 searches] filed by Defendants Garofalo (Document No. 412, in part) and Rodites (Document No. 419, in part) are DENIED FOR LACK OF STANDING;

(3) John Francis "Jack" Conley's Omnibus Pretrial Motion: Motion to Suppress Physical Evidence [1989 searches] (Document No. 374, in part) is DENIED IN PART FOR LACK OF STANDING and DENIED as to the search of the Saw Mill Run premises;

(4) The motions to join in Pretrial Motions of John F. "Duffy" Conley: Motion to Suppress [12/19/89 searches, including 1989 searches of locations as listed in Document No. 826, at 10–11] filed by Defendants Curtin (Document No. 423, in part), Sheila Smith (Document No. 434, in part), Jack Conley (Document No. 418, in part), McGrath (Document No. 417, in part), Abbott (Document No. 429, in part), Rossi (Document No. 438, in part), Fleagle (Document No. 407, in part), Spratt (Document No. 406, in part), Joanne Smith (Document No. 408, in part), Goodwin (Document No. 424, in part), Demino (Document No. 428, in part), Christopher Kail (Document No. 399, in part), Ciocco (Document No. 433, in part), Sukaly (Document No. 430, in part), Ferrell (Document No. 432, in part), Rodites (Document No. 419, in part), and Rusin (Document No. 414, in part) are DENIED;

(5) The Pretrial Motions of John F. "Duffy" Conley: Motion to Suppress [12/19/89 searches, including 1989 searches of locations as listed in Document No. 826, at 10–11] (Document No. 377, in part) is DENIED;

(6) Sheila Smith's First Supplemental Motion to Suppress Physical Evidence (930 Saw Mill Run) [1989 search] (Document No. 448, in part) is DENIED;

(7) John Francis "Jack" Conley's Motion to Suppress Oral Statement (Document No. 450) is DENIED;

(8) The Pretrial Motions of John F. "Duffy" Conley: Motion to Suppress [bank records & FBI subpoenas] (Document No. 377, in part) is DENIED FOR LACK OF STANDING;

(9) The Pretrial Motion of John F. "Duffy" Conley: Motion to Suppress [12/19/89 statement] is DENIED AS MOOT.