**UNITED STATES of America, Appellant,**

**v.**

**John F. "Duffy" CONLEY; William C. Curtin; Sheila F. Smith; John Francis "Jack" Conley; Thomas "Bud" McGrath; Mark A. Abbott; Thomas Rossi; William Steinhart; Roberta Fleagle; Robin Spratt; Monica C. Kail; William J. Reed; Joanne T. Smith; Kenneth "Ron" Goodwin; Lawrence N. "Neudy" Demino, Sr.; Christopher "Chris" Kail; Joseph A. Devita; Frank**

Garofalo; Thomas D. Ciocco; Michael Su-
kaly; Phillip M. "Mike" Farrell; Amestos
"Naz" Rodites; William E. Rusin.

No. 93–3095.

United States Court of Appeals,
Third Circuit.

Argued Aug. 11, 1993.

Decided Sept. 16, 1993.

Thomas W. Corbett, Jr., U.S. Atty., Michael L. Ivory (Argued), Asst. U.S. Atty., Pittsburgh, PA, for appellant U.S.

Alisa N. Carr (Argued), Laughlin, Difenderfer & Boyle, Pittsburgh, PA, for appellee John F. "Duffy" Conley.

Gary Gerson, Pittsburgh, PA, for appellee John Francis "Jack" Conley.

Ellen M. Viakley (Argued), Pittsburgh, PA, for appellee Sheila F. Smith.

Before: SCIRICA, COWEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

The United States appeals from an order entered by the district judge suppressing evidence obtained by police pursuant to a search warrant. The district court concluded that the search warrant was not supported by probable cause and suppressed from evidence the fruits of the search, 813 F.Supp. 372. Because we find that the district court applied an unduly narrow standard for evaluating probable cause, and the search warrant is supported by probable cause, we will reverse.

### I.

On September 23, 1988, members of the City of Pittsburgh Police Department executed a search warrant for a commercial building located at 930 Saw Mill Run Boulevard in the City of Pittsburgh. Earlier that day, Detective John Bosetti presented an application and affidavit of probable cause for a search warrant to District Justice Anne Marie Scharding ("the magistrate"). Bosetti, at the time, was involved in an investigation of illegal gambling activity involving video poker machines. The major issue presented in this case is whether the affidavit on its face provided a substantial basis for the magistrate's finding of probable cause. Accordingly, we set forth in full the statements contained in Bosetti's affidavit:

In June of 1988, affiant began an investigation into a gambling operation, involving video poker machines. During this time frame, affiant and other Dets [Detectives] from the Pittsburgh Police Organized Crime Unit, visited over fifty (50) various locations, throughtout [sic] the City of Pittsburgh, that contained video poker machines. Dets were able to play, at random, these poker machines and received cash payments/pay-offs for credits they had accumulated, in fortynine [sic] (49) different

locations. During this period, Dets observed numerous cash pay-offs to other individuals that were playing poker machines and had aquired [sic] the set amount of credits needed. A detailed accounting of every location is given in each affidavit for search warrant. The City of Pgh, requires a permit for anytype [sic] of video/mechanical amusement device that is placed inside a particular business and made available to the public. Once the establishment registers, they are given a plaque which must be placed inside the premises so it can be viewed by the public. Dets found that of the 49 locations visited, 42 listed Duffy's Vending Co [sic] as the owner of the video poker machines. Dets then examined the permit application form, from these 42 locations and found that Duffy's Vending Co., lists it's [sic] business address as 930 Sawmill Run Blvd., Pgh, Pa. 15220.

On Sep [sic] 15, 1988, affiant observed a Ford pick-up truck transporting a load, of what appeared to be video devices, covered in black plastic. For intelligence purposes, affiant checked the registration plate, Pa# YC–42550 and found it to be registered to Duffy's Vending Co., 930 Sawmill Run Blvd.

The telephone number, 431–6582, is listed as the telephone number for Duffy's Vending Co., as stated on the application for the City of Pgh license permits. Affiant called this number on Sep [sic] 22, 1988 and found it be answered "Duffy's Vending". Affiant checked the Bell of Pa [sic] yellow pages, both Consumer and Business to Business, but found no listing for Duffy's Vending Co.

On March 16, 1988, John Duffy Conley was found guilty for violating Sec # 5513, [sic] of the Pa [sic] Crimes Code, Gambling Devices. John Duffy Conley is listed as the individual owner of Duffys [sic] Vending Co. This conviction was a result of an investigation, inwhich [sic] affiant participated in, that lead to Conleys [sic] arrest for his involvement [sic] in the Slovak Civic Federation of Allegheny County, AKA Slovak Club. In summary, Dets entered the Slovak Club on [sic] various times allowing them to play various machines. They were

able to obtain a cash pay-off after accumulating the required amount of credits on the video poker machines.

Based on the above information, affiant concludes that the business address of Duffy's Vending Co., is 930 Sawmill Run Blvd., Pittsburgh, Pa. 15220 and request [sic] that this search warrant be issued in an effort to gain a better insight into the internal works of this gambling operation. Therefore I request that a search warrant be issued.

App. at 42(a)–43.

The magistrate reviewed the affidavit and application, found probable cause to search the building located at 930 Saw Mill Run Blvd., and issued a warrant which authorized the search and seizure of the following items:

All video poker machines, keys for machines, accounting records, all revenue records, employee records, purchase orders from distributors and manufactors [sic] of video poker machines, all records showing poker machine locations and any and all paraphernalia indicative of a gambling operation.

App. at 42. The warrant was executed on September 23, 1988. The search resulted in the seizure of documentary evidence relevant to Duffy Vending Company. Among the items seized were several bundles of canceled checks for Duffy Vending, personnel record sheets, written notes pertaining to Duffy Vending, sales receipts and several documents concerning employees of Duffy Vending.

As a result of the investigation and search, a federal grand jury returned an indictment against John F. "Duffy" Conley; John F. "Jack" Conley; Sheila F. Smith and others. The indictment included charges that the defendants had engaged in an illegal gambling business and a gambling conspiracy involving video poker machines in violation of 18 U.S.C. §§ 371 and 1955.

Defendants filed a motion to suppress the evidence seized pursuant to the warrant, and an evidentiary hearing was held before the district court. The district court granted the motions to suppress the evidence seized at 930 Saw Mill Run Blvd., holding that the affidavit in support of the search warrant was insufficient to indicate probable cause for the intended search. The government appeals the suppression order. We have jurisdiction to hear this appeal by virtue of 18 U.S.C. § 3731.

II.

Probable cause determinations are necessarily fact-intensive; thus, the standard of review can be outcome determinative. It is important to distinguish between the standard of review which we exercise over a district court, and the standard of review which both we and the district court are to apply to the initial probable cause determination by the magistrate.

When a district court, in reviewing a magistrate's determination of probable cause, bases its probable cause ruling on facts contained in an affidavit, we exercise plenary review over the district court's decision. *United States v. Jones,* 994 F.2d 1051, 1055 & n. 5 (3d Cir.1993); *see also United States v. Deaner,* 1 F.3d 192, 194–95 (3d Cir.1993); *United States v. Cruz,* 910 F.2d 1072, 1076 (3d Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991); *United States v. Belle,* 593 F.2d 487, 497 (3d Cir.), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 277 (1979). *Accord, e.g., United States v. Patrick,* 959 F.2d 991, 996 n. 6 (D.C.Cir.1992) ("We review de novo the district court's ultimate conclusion that the search did not violate the fourth amendment."); *United States v. Uribe–Velasco,* 930 F.2d 1029, 1032 (2d Cir.1991); *United States v. Arrellano–Rios,* 799 F.2d 520, 522 (9th Cir.1986); *United States v. Rambis,* 686 F.2d 620, 622 (7th Cir.1982) ("Whether the information in the affidavit establishes probable cause is a determination based solely on written evidence. Since this determination involves the application of law rather than an evaluation of factual evidence, on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. It must independently review the sufficiency of the affidavit. . . ."); *United States v. Minis,* 666 F.2d 134, 138 (5th Cir.), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *see*

*also Ker v. California,* 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). In the matter presently before us, we exercise plenary review over the district court because the district court found that the affidavit, on its face, did not provide a substantial basis for a finding of probable cause. *Jones,* 994 F.2d at 1055 & n. 5.

■ In contrast, both we and the district court exercise only a deferential review of the *initial* probable cause determination made by the magistrate. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) "A magistrate's 'determination of probable cause should be paid *great deference* by reviewing courts.' " (emphasis added) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)).[1] "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place," *id.,* a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.[2]

■ The Supreme Court has instructed that a reviewing court may not conduct a *de novo* review of a probable cause determination. *Id.* 462 U.S. at 236, 103 S.Ct. at 2331. Even if a reviewing court would not have found probable cause in a particular case, it must nevertheless uphold a warrant so long

as the issuing magistrate's determination was made consistent with the minimal substantial basis standard. Consistent with these teachings, we recently stated:

> In reaching our conclusion, we recognize that a different magistrate judge might have found the affidavit insufficient to support a warrant. However, our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provided a sufficient basis for the decision the magistrate judge actually made.

*Jones,* 994 F.2d at 1057.

■ This standard "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Tehfe,* 722 F.2d 1114, 1117 (3d Cir.1983), *cert. denied sub nom., Sanchez v. United States,* 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984). Nevertheless, the role of the reviewing court is quite limited. The Supreme Court has directed that "although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) (emphasis added), *quoted with approval in Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. at 2331 n. 10.

## III.

### A. PROBABLE CAUSE

■ With the above in mind, the affidavit presented to the magistrate provided a

---

**1.** See also *Jones,* 994 F.2d at 1055 ("[O]ur review of the magistrate judge's probable cause determination is identical to that of the district court.")

**2.** "The task of a reviewing court, the *Gates* majority makes plain, is even more modest—'simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed.' In other words, the warrant is to be upheld as long as there is a 'substantial basis' for a 'fair probability' that evidence will be found in a particular case. *Not much, is it?* " Kamisar, Gates, "Probable Cause," "Good Faith," and Beyond, 69 Iowa L.Rev. 551, 569–70 (1984) (em-

phasis added) (footnote omitted). *See also, United States v. Leon,* 468 U.S. 897, 958, 104 S.Ct. 3405, 3444, 82 L.Ed.2d 677 (Brennan, J., dissenting) (noting the "relaxed standard" of the *Gates* decision).

At least one court of appeals has interpreted the substantial basis standard as so deferential that it has equated it to a clearly erroneous standard. *United States v. Spears,* 965 F.2d 262, 269–70 (7th Cir.) (issuing magistrate's probable cause determination must be upheld unless clearly erroneous), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992).

substantial basis for a finding of probable cause to search the premises in question. The supporting affidavit must be read in its entirety and in a common sense and nontechnical manner. *Gates,* 462 U.S. at 230–31, 103 S.Ct. at 2328. Read in this manner, the affidavit contained ample facts to support a magistrate's finding of probable cause to believe that evidence of wrongdoing would be found at the premises.

Detective Bosetti's affidavit included the following information: detectives played video poker machines at numerous locations; the detectives received illegal cash pay-offs for credits they had accumulated on these machines at forty-nine locations; the City of Pittsburgh requires permits for any type of video or mechanical amusement device which is used in a place of business; these permits must be made available to the public; the detectives were able to ascertain the owner of the machines by examining these permits; of the forty-nine locations in which the machines were being used in conjunction with illegal pay-offs, forty-two of them listed Duffy's Vending Co. as the owner of the machines; the permit application forms for the machines listed the address of Duffy's Vending Co. as 930 Sawmill Run Blvd.; a license plate of a truck appearing to transport a load of video devices was traced to the address of 930 Sawmill Run Blvd.; John "Duffy" Conley is listed as the owner of Duffy's Vending Co.; on March 16, 1988, John "Duffy" Conley was found guilty for violating Title 18, Pennsylvania Consolidated Statutes Annotated, Section 5513;[3] this conviction involved exactly the same type of illegal pay-offs through the use of video poker machines as was being investigated at the time the affidavit was written.

These facts provided probable cause to believe that there was a fair probability that evidence of wrongdoing would be present at 930 Sawmill Run Blvd.

The defendants rely on the fact that, under Pennsylvania law, video poker machines are not per se illegal gambling devices absent a "knock down" button, and that mere possession or distribution of these machines is not illegal.[4] But regardless of whether the machines had a "knock down" button, the machines were being used for illegal purposes. The affidavit states that detectives personally received cash pay-offs for having accumulated credits on the machines. Of forty-nine locations where the machines were being used for illegal purposes, forty-two of them involved use of the machines owned by Duffy Vending Co. Because it is illegal to lease or sell machines knowing that they will be used for gambling,[5] probable cause existed to believe that the lessor or vendor of the machines was involved in the gambling operations, and that evidence of this illegality would be present at the location of the lessor or vendor of the machines.

Even if it could be assumed that no probable cause existed to believe that the lessor or owner himself was involved in the illegality, there was certainly probable cause to believe that business records or other instrumentalities kept at 930 Sawmill Run Blvd. would contain information leading to whether the other lessees or purchasers of the machines were using the machines illegally. This would justify the search. This was not an arrest warrant—it was a search warrant. The facts provided in the affidavit provided

---

**3.** Title 18, Pennsylvania Consolidated Statutes Annotated, Section 5513 provides in relevant part:

§ 5513. Gambling devices, gambling, etc.
(a) Offense defined.—A person is guilty of a misdemeanor of the first degree if he:
(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;
(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or
(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.
18 Pa.Cons.Stat.Ann. § 5513(a) (Purdon 1983).

**4.** *See Commonwealth v. Two Elec. Poker Game Mach.,* 502 Pa. 186, 197–98, 465 A.2d 973, 979 (1983).

**5.** See *supra* note 3.

probable cause to believe that evidence of illegal gambling, not necessarily on the part of the owner of Duffy's Vending Co. himself, would be present at 930 Sawmill Run Blvd. In *Tehfe,* we pointed out that

> [w]hen reviewing an application [for a warrant], courts must ... bear in mind that search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found. The affidavit in support of a warrant need not present information that would justify the arrest of the individual in possession of or in control of the property. Nor is it required that the owner be suspected of having committed a crime. Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant.

722 F.2d at 1117–18 (citation omitted). The fact that John "Duffy" Conley, the owner of the company, is being prosecuted, should not obscure the fact that the original warrant was issued not to arrest John "Duffy" Conley, but rather to search the premises of 930 Sawmill Run Blvd. for evidence of illegal gambling.

█ It is true that the affidavit does not provide direct evidence that proof of wrongdoing would be present at the premises which were to be searched pursuant to the warrant. However, direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant. *Jones,* 994 F.2d at 1056. "Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" *Id.* (quoting *United States v. Jackson,* 756 F.2d 703, 705 (9th Cir.1985)) (citing cases in accord). The normal inferences which can be drawn from the facts presented in the affidavit could lead a magistrate to reasonably link the illegal pay-offs made at the various locations to the premises located at 930 Sawmill Run Blvd. Detective Bosetti's affidavit described in detail that the official permits listed 930 Sawmill Run Blvd. as the address of the owner of the machines which were being used for illegal gambling.

█ In addition to the above information, the affidavit contains another critical fact which supported probable cause. Detective Bosetti set forth that John "Duffy" Conley had been convicted in 1988 for violating a Pennsylvania gambling statute.[6] The affidavit also revealed that the conviction was made in connection with the use of machines for illegal pay-offs. The use of prior arrests and convictions to aid in establishing probable cause is not only permissible, *e.g., United States v. Frost,* 999 F.2d 737, 744 (3d Cir. 1993); *United States v. McNally,* 473 F.2d 934, 940 & n. 14 (3d Cir.), *aff'd,* 491 F.2d 751 (3d Cir.1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974); *United States v. Jakobetz,* 955 F.2d 786, 803–04 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992); *see also United States v. Harris,* 403 U.S. 573, 582, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971), but is often helpful. This is especially so where, as in the matter presently before the court, the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.

█ Defendants contend that the last paragraph of the affidavit, in which Detective Bosetti stated that he "request [sic] that this search warrant be issued in an effort to gain a better insight into the internal works of this gambling operation," App. at 43, reveals that there was no probable cause to issue the warrant. Considered in isolation, this sentence might suggest a paucity of information on behalf of the officer linking the premises to any gambling operation. However, an affidavit "should not be judged as an entry in an essay contest, but, rather, must be judged by the facts it contains." *Harris,* 403 U.S. at 579, 91 S.Ct. at 2080 (quoting *Spinelli,* 393 U.S. at 438, 89 S.Ct. at 600 (Fortas, J., dissenting)). Affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity ... have no

---

**6.** See *supra* note 3.

proper place in this area." *Ventresca,* 380 U.S. at 108, 85 S.Ct. at 746, *quoted with approval in Gates,* 462 U.S. at 235, 103 S.Ct. at 2330–31.

 Moreover, statements in an affidavit may not be read in isolation—the affidavit must be read as a whole. *United States v. Brown,* 3 F.3d 673, 678 n. 5 (3rd Cir.1993); *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. An affidavit which contains unwise, poorly crafted or otherwise defective statements may nevertheless support a valid warrant.[7] Apart from the problematic statement, the other portions of the affidavit, taken as a whole, provide a substantial basis for a probable cause determination.

 The district court noted at length facts which the affidavit does not contain and, based on these omissions, determined that the affidavit did not support a finding of probable cause. By listing information the affidavit did not explicitly state, and focusing on these omissions, the district court essentially conducted a *de novo* review, which is not countenanced under *Gates.* The district courts should focus not on what information an affidavit does not include, but rather on the information it does contain. Considering what the affidavit does state, the district courts should simply ask whether those facts could provide to a magistrate a substantial basis for a fair probability that evidence of wrongdoing will be found.

## B. OVERBREADTH

 We briefly address defendants' contention that the warrant was overbroad.[8] General warrants are prohibited by the Fourth Amendment. In order to prevent the police from conducting a general, exploratory rummaging, a warrant must give a particular description of the things to be seized. *E.g., Andresen v. Maryland,* 427 U.S. 463, 480, 96

S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). Defendants focus on the use of the word "all" in the warrant ("all revenue records"). But use of the word "all", in and of itself, does not render a warrant a general warrant. *See United States v. Christine,* 687 F.2d 749, 753 (3d Cir.1982).

 Moreover, the phrases in a search warrant must be read in context and not in isolation. *United States v. Johnson,* 690 F.2d 60, 64 (3d Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983). Read as a whole, the search warrant allows the seizure of items indicative of an illegal gambling operation. Since the warrant limits the search to items related to an illegal gambling operation, there is sufficient specificity, satisfying the particularity requirement of the Fourth Amendment.

In *Johnson* we stated that we should uphold warrants that contain a general authorization to seize "instrumentalities of the commission of the crime of conducting an illegal gambling business." *Id.* at 66 (citation omitted). "This is sound, as the nature of the crime is such that these instrumentalities are reasonably subject to identification, and the in-premises conduct of such illegal activities would make greater particularity impossible." *Id.* "Likewise, in searches for papers, it is certain that some innocuous documents will be at least cursorily perused in order to determine whether they are among those papers to be seized. But no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision." *Christine,* 687 F.2d at 760. In light of these well established principles, defendants' overbreadth challenge to the warrant lacks merit.

## IV.

The order of the district court which suppressed the search on September 23, 1988,

---

7. This follows from the rule that where a misrepresentation or an omission is included in an affidavit, the affidavit may nevertheless support a valid warrant if information contained in the affidavit, independent of the defective portion, supports a probable cause finding. *Frost,* 999 F.2d at 742–43 (3d Cir.1993). This is true even where the misrepresentation or omission is made intentionally or knowingly, or made with reckless

disregard for the truth. *Id.* In relying on *Frost* for this principle, we do not suggest that the affidavit in this case involves any material omission or misrepresentation.

8. Because the district court found that there was no probable cause, it did not address the overbreadth issue.

will be reversed.[9]

9. Because we find that the warrant was supported by probable cause, we need not address the issue of whether the officers acted in good faith reliance of the warrant.