AMBRO, Circuit Judge,
dissenting.
The Kim’s warrant was so lacking in particularity that no reasonably well-trained officer could execute it in good faith. Thus, I respectfully dissent.[1]
The Fourth Amendment requires that a warrant describe with particularity the place to be searched and the things to be seized. Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). To pass constitutional muster, specificity “[a]s to what is to be taken” is necessary so that “nothing is left to the discretion of the officer executing the warrant.” Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). Moreover, when a warrant is “so facially deficient — ie., in failing to particularize the place to be searched or the things to be seized — that the executing officer cannot reasonably presume it to be valid,” the good faith exception to the exclusionary rule is inapplicable. United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
I. The Kim’s warrant lacked constitutionally required specificity.
The Kim’s warrant was so inexact that the executing officers could not have reasonably presumed its validity. It allowed the seizure of the following items:
Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence.
Computer, computer peripherals, related instruction manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above.
This warrant vested the executing officers with carte blanche to seize all documents— even those written in Chinese — regardless whether the agents knew what the documents were or how they related to the investigation. By doing so, the Government ignored its burden of drafting the Kim’s warrant as specific as possible based on the information available at the time of the search. United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1106 (3d Cir.1989). Here, that limiting information would have included Kim’s alleged time period of involvement and criminal activity.[2]
*156 A. The warrant should have been limited to Kim’s alleged dates of involvement.
As noted by the majority, the warrant did not qualify its generic list of business records by providing a description of the relevant time period under investigation. While the allegations pertaining to Kim’s took place exclusively in 1996, and while those that pertained to the partnership at large occurred from 1994 to 1997, the warrant bestowed license to forage through any records found at Kim’s, even those dating from its opening in 1983 through 1994, a period during which there is no suggestion on the record before us that Kim’s conducted anything but legitimate business. By itself, this deficiency resulted in an unconstitutionally broad warrant. United States v. Ford, 184 F.3d 566, 576 (6th Cir.1999) (“Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.”).
In defending this omission, the majority asserts that “[a]t most, the lack of time restrictions meant that the warrant was overly broad, not general.” Maj. Op. at 151. Controlling case law suggests otherwise. A general warrant is one authorizing “a general exploratory rummaging in a person’s belongings.” Coolidge, 403 U.S. at 467, 91 S.Ct. 2022. For example, Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), involved a general warrant. There, the warrant authorized the seizure of “books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas.” Id. at 486, 85 S.Ct. 506. The warrant here — which contained no limitations as to the time period, transactions, activities, or crimes involved — is not even as specific as that in Stanford, which was found to be unconstitutionally general.
B. The warrant should have been limited to Kim’s alleged criminal activity.
Further, the warrant could have specified the generic types of crimes, ie., food stamp trafficking or money laundering, to which the items designated for seizure pertained. United States v. George, 975 F.2d 72, 77 (2d Cir.1992) (refusing to apply the Leon good faith exception because “a warrant not limited in scope to any crime at all is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise”) (emphasis in original). This defect is fatal, and distinguishes this case from United States v. Conley, 4 F.3d 1200 (3d Cir.1993), which the Government cites for the proposition that the warrant was not facially deficient. In Conley, our Court reviewed a decision of the District Court to suppress based on its finding that a search warrant for the premises of a business which leased poker machines failed to establish probable cause. On appeal, defendants maintained that the warrant at issue was overbroad because it authorized the seizure of
[a]ll video poker machines, keys for machines, accounting records, all revenue records, employee records, purchase orders from distributors and manufactors [sic] of video poker machines, all records showing poker machine locations and any and all paraphernalia indicative of a gambling operation.
4 F.3d at 1204. Our Court rejected the argument, finding that the warrant satisfied the particularity requirement of the Fourth Amendment because it fairly limited the search to items related to the illegal gambling operation under suspicion. Id. at 1208.
In contrast, the Kim’s warrant did not so much as allude to the illegal activity under investigation. An agent reviewing *157 and implementing the warrant on Kim’s would have no basis to distinguish between business records and receipts relating to suspected illegal conduct and those that were altogether irrelevant and innocuous. The Kim’s warrant did not meaningfully limit the intrusion into personal privacy because it failed to direct the officers to seize only items probative of crimes, here money laundering and/or food stamp fraud. Cf. United States v. McClintock, 748 F.2d 1278, 1282-83 (9th Cir.1984) (approving warrant containing the language “any and all items referring to the sale of diamonds and other gemstones which are evidence of a violation of Title XVIII”); United States v. Dennis, 625 F.2d 782, 792 (8th Cir.1980) (upholding a warrant which called for seizure of “certain books and records (or items of evidence) relating to the extortionate credit transaction business”); Grimaldi v. United States, 606 F.2d 332, 337, 339 (1st Cir.1979) (holding that the phrase “paraphernalia used in the manufacture of counterfeit federal reserve notes” was an adequate means of limiting the warrant).
The majority justifies the Government’s failure to include a phrase limiting the warrant to the alleged criminal activity because “the investigation in this case sought to prove a negative (that Kim’s had not engaged in legitimate sales to the sham groceries).” Maj. Op. at 150-51 (emphasis in original). This position essentially endorses a fishing expedition where the Government is allowed to seek evidence of legitimate, not illegitimate, conduct.[3] Further, this “negative” proof argument contradicts the Supreme Court’s dictate that before a search warrant may issue, the magistrate judge must be satisfied that “there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (emphasis added). Contrary to the majority’s assertion, the Government can obtain a warrant only for evidence suggesting illegal conduct, not for evidence, or a dearth of evidence, suggesting legal conduct.
The majority exacerbates this misapprehension of law by stating that “in order to show that evidence of such transactions was lacking, it was necessary to examine all of Kim’s ‘receipts, invoices, lists of business associates, records of telephone numbers, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals and correspondence.’ ” Maj. Op. at 150 (emphasis in original). This argument essentially suggests that Kim’s was “permeated with fraud,” or was so extensively involved in the scheme that it affected every level of its organization. Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir.1987).
However, the Government’s own brief and affidavit undermine the majority’s analysis. A business, does not qualify as “permeated with fraud” if it is an actual legitimate business which is merely involved in a particular criminal activity for a finite period of time. United States v. Kow, 58 F.3d 423, 428 (9th Cir.1995). Here, the Government itself acknowledges that Kim’s was first established in 1983, over ten years prior to the business’ first alleged involvement in the scheme, and that during 1995 and 1996 Kim’s received only 13% of its total revenue from the alleged scheme. Government’s Br. at 24. By all accounts, Kim’s was a legitimate business even when it was participating in the scheme. More importantly, there is no *158 evidence of its criminal involvement during the first twelve years of its existence. Under these circumstances, Kim’s does not qualify as an entity “permeated with fraud,” and thus, the majority errs by justifying a wholesale seizure of all business records.
II. The Government took no steps to limit the scope of the search and seizure.
In addition to its inadequate drafting, the Government failed to undertake subsequent measures to limit the scope of the search and seizure. The affidavit was not incorporated into or attached to the warrant, and therefore the affidavit cannot serve as a source of additional specificity. See United States v. Johnson, 690 F.2d 60, 64 (3d Cir.1982) (holding that where an affidavit is incorporated by reference into the warrant, the affidavit can cure the warrant’s lack of particularity).
Further, Agents Thomerson and McElravy, the officers who swore out the affidavit, failed to supervise the Kim’s search and seizure. Their inaction distinguishes this case from United States v. Kepner, 843 F.2d 755 (3d Cir.1988), which the majority cites for support without actual discussion. In Kepner we upheld a warrant that authorized the search and seizure of “documents, records, and personal effects” of Thomas Kepner, a union official who was the subject of a continuing investigation into labor racketeering. The application and accompanying affidavit used more specialized language than the warrant, alleging probable cause to believe that a search of the condominium would yield “clothing, documents, records, diaries, and correspondence that establish [Kepner’s] use and control of the condominium unit as well as his illegal receipt of prohibited benefits.” Id. at 762 (alteration in original). Even though the search team in Kepner did not have a copy of the affidavit handy, the lead agent who drew up the affidavit carefully instructed his team as to the scope of the search and “took responsibility for determining whether every piece of seized evidence fell within the scope of the warrant.” Id. at 763-64. Comparable diligence was not exercised here.
Similarly, the majority places considerable emphasis on Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), in which the Supreme Court allowed the good faith exception to proceed where a warrant was invalidated by a state appellate court for failing to describe the “things to be seized.” Though the warrant in Sheppard authorized an expansive search without specific description of the items to be seized, the detective who prepared the affidavit and secured the warrant made every effort to correct inaccuracies in the form warrant, personally supervised the search of Sheppard’s residence, and brought along a copy of the affidavit to the search. Id. at 985-89, 104 S.Ct. 3424. In other words, the critical factor motivating the Supreme Court to disregard the judge’s clerical oversight was the fact that the officers “took every step that could reasonably be expected of them.” Id. at 989, 104 S.Ct. 3424. In contrast, the officers here took no steps to limit the search and seizure of Kim’s business records.
More comparable is United States v. Leary, 846 F.2d 592 (10th Cir.1988), where the Tenth Circuit affirmed a suppression order on the grounds that the warrant was so facially overbroad as to negate any claim of good faith. The warrant in Leary, predicated on probable cause to believe that the defendant had engaged in an illegal export transaction, authorized the search of an export company for
[cjorrespondence, Telex messages, contracts, invoices, purchase orders, ship *159 ping documents, payment records, export documents, packing slips, technical data, recorded notations, and other records and communications relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act of 1979, 50 U.S.C.App. 2410.
846 F.2d at 594. The search generated twenty boxes of business records, most unrelated to the investigation. See id. at 594-95. The Court held that the warrant, which “encompassed virtually every document that one might expect to find in a modern export company’s office,” was facially deficient in light of the fact that the Government had in its possession information that it could have used to limit more precisely the description of the documents to be seized. Id. at 600-02.
As in Leary, information was readily available to the Government in this case to make the warrant’s description of the records to be seized substantially more specific. Instead, the Government rejected more precise language, and the sweeping results speak for themselves: the Government confiscated thirty-six boxes of documents, a filing cabinet, two computers, twelve plastic bags containing brown paper bags, and U.S. currency.
III. Suppression is the only appropriate remedy.
Finally, the majority misapplies the redaction remedy endorsed in United States v. Christine, 687 F.2d 749, 759 (3d Cir.1982). While conceding that the warrant should have included time restrictions, the majority states that Christine’s redaction concept may cure this defect by authorizing a reviewing court to insert the relevant dates into the Kim’s warrant. This reasoning stretches Christine to the majority’s Procrustean bed by endorsing the rewriting, not the redacting, of this unconstitutional warrant. But as Christine makes clear, redaction does not include inserting new terms into a warrant. Instead, “[b]y redaction, we mean striking from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and -preserving those severable phrases and clauses that satisfy the Fourth Amendment.” Id. at 754 (emphases added). This definition does not include redrafting a document to add time or criminal activity limitations, especially when, as here, the warrant contained no such “phrases and clauses” in the first place.
“Redaction is inappropriate when the valid portions of the warrant may not be meaningfully severable from the warrant as a whole.” Id. When, as with the Kim’s warrant, “no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required.” Kow, 58 F.3d at 427-28 (refusing to allow redaction or apply the good faith exception when the Government “did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place” and failed “to describe ... the specific criminal activity suspected.”); see Christine, 687 F.2d at 758 (“It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed.”). Similar to the warrant in Kow, no portion of the Kim’s warrant is limited by reference to dates or criminal activity. In this situation, redaction is not only inappropriate, it is wholly unfeasible.
IV. Conclusion
Any number of measures — limiting the warrant by relevant time period, transactions, or criminal activities, incorporating or attaching the affidavit, supervising the search to limit the officers’ discretion— could arguably have allowed this warrant *160 to survive constitutional scrutiny. The Government chose instead to draft a general warrant the Fourth Amendment explicitly forbids. Further, “[w]hen the Supreme Court announced the good faith exception in Leon, it weakened the exclusionary rule, but it did not eviscerate it. Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.” United States v. Zimmerman, 277 F.3d 426, 487-38 (3d Cir.2002). Sensing that it was indeed in trouble, the Government conceded at oral argument that the Kim’s warrant “could have been written better, and should have been written better.” This admission is an understatement of unconstitutional proportion. To sanction it nonetheless lets Leon’s good faith exception swallow the Fourth Amendment’s rule. I respectfully dissent.

. I agree with the majority that the record is inadequate to resolve Kim’s argument with respect to the seizure of documents written in Chinese. In my opinion, however, that issue would not be reached, as all the evidence taken from Kim’s should be suppressed due to the constitutionally defective warrant in this case.

. Based on the information contained in its affidavit, the Government also could have limited the search and seizure to documents bearing some relation to Kim’s transactions with the targeted grocery stores or the individuals known to be participants in the fraud.

. Ironically, the majority contradicts its own "negative” proof argument by also stating that the Government seized the documents to prove a positive, i.e., as actual direct evidence of a money laundering scheme. Maj. Op. at 150 n.6.