**UNITED STATES of America,**

v.

**Aaron ATWELL.**

**Criminal Action No. 03–1 ERIE.**

United States District Court,
W.D. Pennsylvania.

Sept. 17, 2003.

Thomas W. Patton, AFPD, Federal Public Defender's Office, Erie, PA, for defendant.

## *MEMORANDUM OPINION*

MCLAUGHLIN, District Judge.

Presently pending before the Court is a motion to suppress filed by Defendant Aaron Atwell. Atwell is charged in this criminal action with one count each of pos-

sessing an image of a United States obligation and printing an impression of a United States obligation, both in violation of 18 U.S.C. § 474. For the reasons discussed below, Atwell's motion will be denied.

## I. BACKGROUND

The instant charges stem from a search of Atwell's residence which was performed on October 18, 2002 in connection with the disappearance of one Joseph T. Donato of Sheffield Township, Pennsylvania. The following facts are not disputed.

On October 14, 2002, Donato's mother, Sandy Donato, contacted the Sheffield Township Police Department and reported that Donato had not been seen since the night of October 12 when his cousin had observed him driving in the direction of his home. The Sheffield Police undertook an investigation of Donato's whereabouts in conjunction with the Pennsylvania State Police. It was determined that Donato's car had been located in a parking lot in the early morning hours of October 13, 2002 with the driver's window down, the keys in the car, and Donato's hunting equipment inside. Family members advised the police that Donato would never leave his vehicle unlocked.

Eventually, the investigating authorities came to suspect that Atwell was involved in Donato's disappearance. One of Atwell's friends, Pam Slater, notified the police that she was at Atwell's residence shortly after midnight on October 13, 2002 and had observed Donato's vehicle in the driveway with the driver's side window down and the CD player on. When Slater asked where "Joe" was, Atwell responded that Donato's car had broken down and he had walked home. Slater noticed a blanket hanging in the doorway to Atwell's living room, which blocked the view between the dining room and the living room. According to Slater, this hanging blanket

had not been present when she was at Atwell's home the evening before. In addition, Slater claimed that Atwell was acting nervous and jittery during their encounter on October 13. She claimed that Atwell followed her to her car as she was leaving that night, which was unusual for him to do.

Another individual by the name of Shannon Ace advised the police that he was at Atwell's residence on October 15, 2002 and observed what appeared to be blood stains on the carpet and in the kitchen which had not been present when he was at Atwell's home the week before. According to Mr. Ace, Atwell made unusual statements on October 15 to the effect, "I hope no one is trying to set me up. I hope no one buried a body under my house." In addition, Atwell denied seeing Slater on the night of October 12–13 and told Mr. Ace that he had last seen Donato on the night of October 11.

Based on this information, Patrolman Daniel Madigan of the Sheffield Police Department obtained a Pennsylvania search warrant on October 16, 2002. The warrant, issued by District Justice Glenn Carlson, authorized a search of Atwell's residence for "[a]ny and all physical evidence including but not limited to: [s]uspected blood stains and other trace evidence that may aid in determining the disappearance and whereabouts of Joseph T. Donato." The search resulted in the seizure of numerous items of evidence from Atwell's home, e.g.,: carpeting and paneling with suspected blood stains; blood soaked items including a blanket, washcloth and clothing; a door containing an apparent bullet fragment; assorted ammunition; and various drug related items. In the course of their search law enforcement officers observed, in plain view on the first floor, a printing press, a photo condensing machine, printer's ink, and other items associ-

ated with printing images and documents. In an upstairs bedroom, officers also discovered a closed, accordion-style file folder lying in an open closet area. Inside the file were a sheet of paper bearing black and white images of two $100 federal reserve notes and negative images of numerous $100 federal reserve notes (some front only, some back only) on bendable plastic plates.

Upon discovering these items, the State Police contacted the United States Secret Service and advised the Agency of the possible evidence of counterfeiting found in the home. Several Secret Service agents, including Special Agent Patrick Beretsel, subsequently arrived at Atwell's home to view the evidence. Upon entering the bedroom, Special Agent Beretsel observed a stack of blank polychrome bendable plates for use in a printing press along with printing ink, operating instructions for the printing press, and photography paper—all of which were lying out in the open on the bedroom floor. Additionally, Corporal Robert Bemis of the Pennsylvania State Police retrieved the photocopied images and negative images of the $100 reserve notes from the expandable file folder and showed them to Special Agent Beretsel.

Thereafter, Special Agent Beretsel applied for a federal search warrant in order to search Atwell's home for evidence of counterfeiting. In relevant part, the affidavit in support of probable cause states as follows:

3. For the following reasons, I have probable cause to believe that currently located at [Atwell's residence] are items consistent with the production and/or manufacture of counterfeit United States currency, including but not limited to: a printing press, printing equipment, photography equipment, printing ink, printing paper, photography paper, printing plates, negative images of Unit-

ed States currency, and counterfeit federal reserve notes.

4. On or about October 16–18, 2002, the Pennsylvania State Police in conjunction with the Sheffield Township Police Department executed a Commonwealth of Pennsylvania Search Warrant for [Atwell's residence] in relation to an investigation for a violation of 18 Pa. C.S.A. § 2501, criminal homicide. The Affidavit of Probable Cause in support of the Application for Search Warrant in relation to the homicide investigation is attached hereto as Exhibit A.

5. While executing the aforementioned Search Warrant, law enforcement officers observed the following located in plain view within the residence ..: an offset printing press (side room attached to house); photography equipment and a canister of printing ink (on front porch); photography machine (on front porch); negative images of $100.00 federal reserve notes on bendable plates of hard plastic (negative images were of both front and back of $100.00 federal reserve note) (upstairs bedroom); photography paper, blank bendable plastic plates, and printing ink (upstairs bedroom); a round container of offset printing ink (basement); and one sheet of paper containing a black and white image of the front of a $100.00 federal reserve note. Your affiant believes that all of these items are consistent with the production and/or manufacture of counterfeit federal reserve notes.

6. Also found within the residence ... were blank social security cards (upstairs bedroom) and a death certificate/obituary from 1967.

7. Based upon my training, experience and expertise as a Special Agent of the United States Secret Service, who has investigated numerous violations of federal statutes concerning counterfeiting and forgery, I know that persons

engaged in producing and/or manufacturing counterfeit obligations possess printing presses, plates, bendable or hard plates, negative images of federal reserve notes, printing inks, printing paper, photography equipment, counterfeit currency, computer and offset printing presses.

8. Based upon the foregoing information, there is probable cause to believe that in the residence ... there is located counterfeit currency or instrumentalities used to produce and/or manufacture counterfeit currency, which are fruits, instruments and mere evidence of the crime of counterfeiting and forgery, in violation of Title 18, United States Code, Sections 471, 472, 473 and 474.

Based on the information set forth in Agent Beretsel's affidavit, United States Magistrate Judge Susan Paradise Baxter telephonically issued a federal warrant authorizing a search of Atwell's home by the Secret Service Agents. As a result of their search, over eighty items of evidence were seized. That evidence forms the basis of the instant charges.[1]

## II. DISCUSSION

Atwell challenges the legality of the federal search warrant insofar as it is premised on the validity of the state officers' search of his home relative to the disappearance of Joseph Donato. More specifically, Atwell contends that the underlying state search warrant is invalid as a general warrant or, in the alternative, as an overly broad warrant. It follows, Atwell argues, that the items uncovered by the state officers relative to Atwell's alleged counterfeiting activities were the fruits of an illegal search and could not lawfully be utilized by Special Agent Beretsel in his application for a federal search warrant.

### A.

 The prohibition against general warrants arises from the "particularity requirement" of the Fourth Amendment.[2] A general warrant is one that vests in the executing officer an "unbridled discretion" to conduct "a general exploratory rummaging in a person's belongings." *United States v. Christine*, 687 F.2d 749, 752, 753 (3d Cir.1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 447, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). The particularity requirement "seeks to prevent general warrants by requiring all warrants to contain a 'particular description' of the things to be seized." *Id.* Thus, "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Id.* at 752–53 (quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927)).

 At the same time, however, "no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision." *Christine*, 687 F.2d at 760. Thus, the Fourth Amendment does not prohibit searches for "long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described." *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d 137, 148 (3d Cir.2002). Nor does use of the word "all" necessarily render a warrant a general warrant. *United States v. Conley*, 4 F.3d 1200, 1208

---

1. Atwell eventually confessed to the accidental shooting of Joseph Donato. After pleading guilty to third-degree murder, he was sentenced to serve 20 to 40 years of imprisonment.

2. Pursuant to the Fourth Amendment, "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

(3d Cir.1993) (citing *Christine*, 687 F.2d at 753).

 Moreover, the Third Circuit has made clear that search warrants and their supporting affidavits are to be judged "in a commonsense and realistic fashion." *Christine*, 687 F.2d at 760. The use of generic classifications in a warrant is therefore sufficient to delineate the categories of items to be seized when, due to the circumstances of the investigation, a more precise description is not feasible. *Id.* (citing cases). *See also United States v. American Investors of Pittsburgh*, 879 F.2d 1087, 1106 (3d Cir.1989) ("Here, given the range of information required to unravel the laundering scheme and the extent of participation by the parties, the warrant was as specific as circumstances would allow, however broad the requirements of the search might be."). *Accord United States v. Wicks*, 995 F.2d 964, 973 (10th Cir.1993) ("A warrant describing 'items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit.' ") (citation omitted); *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) (one of the factors in judging a warrant's sufficiency is whether the government was able to describe the items more particularly in light of the information available to it when the warrant was issued); *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985) (warrant which authorized, *inter alia*, the seizure of "all property constituting evidence of the crimes of making and conspiring to make extortionate extensions of credit, financing extortionate extensions

of credit and collections of and conspiracy to collect extortionate extensions of credit which are being kept there in violation of [18 U.S.C. §§ 892–894]" was permissible in light of the nature of the loansharking investigation and the difficulty police would have had in providing more specific description); *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 58 (D.Conn.2002) (warrant, which authorized seizure of defendant's computer's hard drive where "government had no way of knowing what information would be found on the laptop computer and thus could not have described more precisely the form of the evidence and the exact location on the hard drive where it was located"); *United States v. Conley*, 859 F.Supp. 899, 908 (W.D.Pa.1994) (upholding warrant that permitted, *inter alia*, seizure of "[a]ny and all documents relating to loans and/or financial transactions between vendor and establishment" concerning video poker machines).

Applying these standards to the facts involved here, we find that the state search warrant was not invalid as a general warrant. Fairly read, it confined the search to Atwell's residence (including the front porch, back patio, yard and driveway) and permitted seizure of "any and all physical evidence" that might be relevant in determining "the disappearance and whereabouts of Joseph T. Donato." This description of items to be seized appropriately limited the discretion of those officers executing the warrant and permitted them to make a rational determination as to what items could properly be taken as potential evidence.[3] *See, e.g., United*

---

3. There was testimony at the suppression hearing that, in executing the warrant, Corporal Bemis consulted with the investigating officer from the Pennsylvania State Police, Trooper Neiswonger, concerning the potential evidentiary value of various items located within the house. The fact that Corporal Bemis may have deferred to Trooper Neis-

wonger's discretion in determining which items to seize does not, in the Court's view, convert this warrant into a general warrant. The record reflects that Corporal Bemis was not involved in the investigation of Donato's disappearance and, therefore, was not independently familiar with the details of the case;

*States v. Layne*, 43 F.3d 127, 132 (5th Cir.1995) (particularity requirement is satisfied "if the description in the warrant would permit an executing officer to reasonably know what items are to be seized") (citation omitted); *Triumph Capital Group, Inc.*, 211 F.R.D. at 57 (A warrant need only be specific enough for "the executing officer to exercise reasonable, rational and informed discretion and judgement [sic] in selecting what should be seized.") (citing cases).

Atwell objects to the fact that, as a practical matter, the search warrant permitted police officers to search every inch of his home, including closed containers. He takes special exception to the use of the term "trace evidence" which, he claims, "is by definition very small and therefore could be contained in any small container" within Atwell's house. (Def.'s Mot. to Suppress at p. 6.) However, the officers executing the warrant did not have unbridled discretion to seize any item *carte blanche* because the warrant made clear that the search was being conducted in the context of a homicide investigation. Therefore only "trace evidence" reasonably related to Donato's disappearance could be seized.

Moreover, there is nothing objectionable about the inclusion of "trace evidence" language, given the nature of the investigation and the unknowns as to what specifically had happened to Donato. As in many cases of suspected homicide,[4] it was perfectly logical for the officers to search for items such as Donato's blood, hair, fibers, fingerprints, items of identification, personal possessions, receipts or the like, since those items might well link Atwell to Donato at or near the time of Donato's disappearance. We agree with the government's position that, because of the factual uncertainties surrounding Donato's disappearance, it would have been impossible for the officers to anticipate each and every type of evidence that might be found at Atwell's house. Furthermore, the reality that these items may be small (and therefore might be found in any small container) is an unfortunate fact of life for Atwell but does not render the warrant invalid. It is well established that a warrant can be "indubitably broad" without being impermissibly general. *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d at 149. It is not the magnitude of the

instead, he was present at Atwell's residence solely to collect potential evidence as defined by the lead investigators. To the extent Trooper Neiswonger made the final decision as to what items would be seized under the warrant, it is his discretion that is relevant. We think that the warrant was specific enough such that Trooper Neiswonger could rationally and reasonably determine which items were authorized for seizure.

4. Unlike Atwell, we have little difficulty concluding that there was probable cause, at the time the warrant was obtained, to suspect Atwell's involvement in the homicide of Joseph Donato, notwithstanding the absence of a body. To recap the pertinent facts, Donato had been missing for several days; his car had been seen abandoned at Atwell's home, then later in a parking lot; Atwell was observed to be acting nervous and jittery on the

night of Donato's disappearance and had hung a blanket in his home blocking access to the dining room; blood-like stains were observed in Atwell's home several days after Donato's disappearance; and Atwell made bizarre statements about hoping that no one had buried a body beneath his home. In addition, Atwell had given conflicting statements about when he last saw Donato and he denied having seen Pam Slater on the night of Donato's disappearance. In light of these facts, the district justice could well find that there was a "fair probability" law enforcement officers would find evidence of a crime, *i.e.*, homicide, in Atwell's home. *See United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) ( [T]he task of the issuing magistrate is simply to determine whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place.")

search which determines its permissibility but whether the search and seizures were reasonable under all the circumstances. *See United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir.1982).

Atwell also objects to the warrant's authorization to seize "any and all physical evidence" that "may aid in determining the disappearance and whereabouts" of Donato. This language, Atwell contends, is "enormously broad" and theoretically encompasses any physical object, thus giving the officers unbridled discretion to determine what items constituted "physical evidence." (*Id.*) We disagree. The officers were constrained by the limitation that the evidence had to have some potential relation to Donato's disappearance. Although the search warrant permitted a thorough search of Atwell's premises, it did not permit the officers to seize, willy-nilly, any item they might find. The circumstances of the case and the nature of the crime under investigation helped to define the parameters of relevant evidence, thus satisfying the particularity requirement. *See Conley*, 4 F.3d at 1208 ("Read as a whole, the search warrant allows the seizure of items indicative of an illegal gambling operation. Since the warrant limits the search to items related to an illegal gambling operation, there is sufficient specificity, satisfying the particularity requirement of the Fourth Amendment."); *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir.1982) (upholding warrants that contain a general authorization to seize "instrumentalities of the commission of the crime of conducting an illegal gambling business" and noting that "the nature of the crime is such that these instrumentalities are reasonably subject to identification, and the in-premises conduct of such illegal activities would make greater particularity impossible"). *Accord Triumph Capital Group, Inc.*, 211 F.R.D. at 58 (upholding warrant where it did not authorize a general, unfettered or indiscriminate search of

all computer logs and "records," but authorized a search and seizure that was limited to evidence of the specific crimes under investigation and a specific time period).

**B.**

■■■ Atwell also maintains that the state search warrant was invalid as overly broad. An overly broad warrant " 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d at 149 (quoting *Christine*, 687 F.2d at 753–54). Unlike a general warrant, an overly broad warrant can be cured by redacting those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those that comport with the Fourth Amendment's requirements. *Id.* (citing *Christine*, 687 F.2d at 754). Furthermore, evidence seized pursuant to an overly broad warrant may be admissible under the good faith exception. *Id.*

Here, Atwell concedes there was probable cause for the issuing district justice to believe that there were blood stains in Atwell's home that could have come from Donato. However, he maintains that there was no probable cause to believe that any other evidence relating to the disappearance of Mr. Donato would be found in Atwell's house. We disagree.

■■■ The task of the issuing magistrate is simply to determine whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Conley*, 4 F.3d at 1205 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). As a reviewing court, we exercise a deferential standard of review as to this initial

probable cause determination. *See id.* ("A magistrate's determination of probable cause should be paid *great deference* by reviewing courts.") (emphasis in original) (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. 2317). In fact, our review is limited to ensuring that the issuing authority had a "substantial basis" for concluding that probable cause existed. *Id.* Based on a multiplicity of facts (*see* footnote 4, *supra* ), District Justice Carlson had a substantial basis for concluding that there was a fair probability that physical evidence (including trace evidence) linking Atwell to Donato would be found within Atwell's home.

 Furthermore, even if the warrant were in fact overly broad, we would still find that the executing officers reasonably relied upon its validity in good faith. Under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority. *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d at 145. To determine whether the exception applies, courts inquire "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* Typically, "the mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Id.* at 146. *See also United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir.2001); *United States v. Loy*, 191 F.3d 360, 367–68 (3d Cir.1999).

 Our Circuit Court of Appeals has delineated four situations in which an officer's reliance on a warrant is not reasonable:

(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d at 146 (quoting *Hodge*, 246 F.3d at 308). In this case, the first two exceptions are not implicated. As to the third, we have already determined that there was a substantial basis to support District Justice Carlson's probable cause determination. Accordingly, it was not unreasonable—and, indeed, it was entirely appropriate—for the executing officers to rely on that determination. With respect to the fourth exception, we find no facial deficiency in the warrant in terms of the particularity requirement. Thus, that exception does not apply.

In sum, the state search warrant obtained by Patrolman Madigan was not deficient as overly broad. In any event, however, suppression of the items seized is not warranted because the officers executing the search warrant acted in objectively reasonable good faith when they relied on the validity of the search warrant.

## III. CONCLUSION

For all of the foregoing reasons, Atwell's motion to suppress evidence is denied. An appropriate order follows.

## *ORDER*

AND NOW, to wit, this _____ day of September, 2003, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant Aaron Atwell's Motion [Doc. No. 13] to Suppress is hereby DENIED.