**STATE of Indiana, Plaintiff–Appellant,**

**v.**

**David HORNICK, Defendant–Appellee.**

**No. 49A02–8802–CR–45.**

Court of Appeals of Indiana,
Third District.

July 17, 1989.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Richard D. Gilroy, Indianapolis, for defendant-appellee.

HOFFMAN, Judge.

Plaintiff-appellant State of Indiana appeals a trial court decision granting defendant's motion to suppress evidence.

The facts relevant to this appeal disclose that Hornick is a student at Indiana University–Purdue University in Indianapolis. On February 3, 1987 Hornick was to have a meeting with a staff member on campus. Due to earlier problems with Hornick, the member requested the presence of an officer during the meeting. Officers Sweeney and Reynolds responded to the request.

Officer Reynolds had run a routine check on Hornick in December 1986 due to the previous problems and had found that Hornick's driver's license was suspended. After the request for an officer to be present at the meeting, Officer Reynolds informed Officer Sweeney of his prior knowledge of Hornick's license being suspended. Sweeney ran an additional check on Hornick's record at approximately 12:30 P.M. on the day of the arrest and found that his license was still suspended.

During the meeting, Officer Reynolds remained in his car outside the building while Officer Sweeney was positioned in an outer office of the staff member. After the meeting, Reynolds observed Hornick enter his car and drive away. Reynolds radioed a request for a marked car to stop Hornick's car due to a suspended license, giving a description of the vehicle.

Officers Turley and Harris responded to the request and stopped Hornick for an equipment violation and driving with a suspended license. The officers confiscated a fictitious license.

At trial, the defendant moved to suppress all evidence arising from the stop of defendant's car contending that the police did not have sufficient grounds to stop defendant's vehicle. After a hearing on said motion the trial court granted the defendant's motion to suppress evidence.

The issue appealed is: whether the arresting officers had probable cause to stop the defendant's car and seize the fictitious license in his possession.

In review of a suppression hearing, the Court of Appeals will not weigh evidence or adjudge the credibility of witnesses. *Snyder v. State* (1984), Ind.App., 460 N.E. 2d 522.

The defendant contended in his motion to suppress evidence that his detention, arrest, and seizure were without probable cause since he had not been observed by officers in the commission of a crime nor did the officers have reasonable grounds to believe he had committed an offense. He alleged that officers took a certain driver or operator's license without probable cause or his consent and that the seizure was a result of an illegal arrest. He further alleged that his constitutional rights were violated by the arrest, detention and seizure of the operator's license and that physical evidence, witnesses and other evidence were obtained by police as direct and indirect fruits of an illegal arrest and detention.

Officers Reynolds and Sweeney testified that a check had been run on the status of Hornick's license by Officer Sweeney and that Officer Reynolds had requested Hornick's car be stopped after he saw Hornick enter the car and drive off knowing that Hornick's license was suspended.

Officers Turley and Harris testified that they heard the various dispatches (*i.e.* the check on the license, the result of the check, and the request to stop the vehicle) prior to stopping Hornick. They cited two reasons for stopping Hornick: driving while license suspended and equipment violation.

Officer Turley testified:
"[Defense Counsel:] Q. Why were you told to stop him?—
A. Because Detective Sweeney and Reynolds had prior knowledge of his license being suspended.

Q. And, how do you know that, sir?

A. Because they had ran [sic] a check on him earlier.

Q. And, is that the reason that you stopped Mr. Hornick, because of information that Detective Reynolds and ... or either Detective Sweeney had supplied to Dispatch.

A. *That was one of the reasons.* The other reason was that I saw him coming out of the parking lot with one headlight, and one headlight out, and one on, ...

Q. Now let me ask you this, sir.

A. ... which was a [sic] equipment violation.

Q. Let me ask you this sir. You said that Detective Reynolds and Detective Sweeney had supplied information to Dispatch, am I correct?

A. That's correct.

Q. Had that information been relayed to you before you stopped Mr. Hornick?

A. I had knowledge of it, yes."

Officer Harris testified:

"[Defense Counsel:] Q. He had his headlights on?

A. Well, he had one on. There was an equipment violation.

Q. And, this was about 3 o'clock in the afternoon?

A. Yes, sir.

Q. Was that the reason why you and Officer Turley stopped him?

A. Yes, sir.

Q. *Was that the only reason, ma'am?*

A. *We also knew that his driver's license had been suspended.* We had heard that information earlier, through Dispatch." (Emphasis added.)

It is well settled that police officers may rely upon dispatches from their own and other departments.

"Probable cause justifying an arrest without a warrant exists where the facts and circumstances, as well as other trustworthy information, would lead a reasonable, prudent person under the conditions at the time to believe a crime had been committed. *Crane v. State,* (1978) 269 Ind. 299, 380 N.E.2d 89. However, the existence of probable cause cannot be confined to the facts within the knowledge of the arresting officer. Probable cause should be determined on the basis of the collective information known to the law enforcement organization as a whole and not solely to the personal knowledge of the arresting officer. The police force being a unit wherein there is police-channel communication, if an officer acts in good faith reliance upon such information, the arrest will be deemed to have been based on probable cause so long as sufficient knowledge to establish probable cause exists within the organization. *Grzesiowski v. State,* (1976) 168 Ind.App. 318, 343 N.E.2d 305; *Francis v. State,* (1974) 161 Ind.App. 371, 316 N.E.2d 416."

*Benton v. State* (1980), 273 Ind. 34, at 37–38, 401 N.E.2d 697, at 699.

The requirement in Indiana that a misdemeanor be committed in an officer's presence does not preclude application of the general principle.

"It is well established in Indiana that a police officer has the authority to make an arrest for a misdemeanor when the misdemeanor is committed within his view. *Works v. State,* (1977) 266 Ind. 250, 362 N.E.2d 144; *Hart v. State,* (1924) 195 Ind. 384, 145 N.E. 492; *Britt v. State,* (1979) [182] Ind.App. [546], 395 N.E.2d 859. It is also clear that the existence of probable cause to arrest is determined upon the basis of the collective information known to the law enforcement organization, *Owens v. State,* (1981) Ind., 427 N.E.2d 880; *Benton v. State,* (1980) [273] Ind. [34], 401 N.E.2d 697, and the observance of the misdemeanor may be part of that collective information. *Britt v. State, supra,* 395 N.E.2d 859, 861 n. 1. Here, a police officer did actually observe the misdemeanor and relayed this information to another police officer."

*Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1115.

At the time of the stop, all involved officers were aware of the status of Hornick's license. Officers Turley and Harris were

allowed to rely upon the dispatches. Harris, in fact, reconfirmed the status of Hornick's driver's license after he was stopped.

The evidence clearly establishes that the officers stopping Hornick had probable cause to believe he was committing a misdemeanor in their presence, driving while his license was suspended. There was no evidence presented that a check of Hornick's license was not run or that a dispatch requesting a marked car to stop Hornick's vehicle was not made.

The trial court's ruling is clearly erroneous. It is contrary to the evidence presented and hence contrary to law. Since the stop was legal, any evidence obtained thereafter should be admissible at trial.

Reversed.

SHIELDS, P.J., and BUCHANAN, J., concur.