**In re the Marriage of Steven C. TROYER, Appellant–Respondent,**

v.

**T. Dilynn TROYER, Appellee–Petitioner.**

**No. 20A03–9606–CV–207.**

Court of Appeals of Indiana.

Oct. 31, 1997.

Michael A. Cosentino, Cosentino, Shewmaker & Christofeno, Elkhart, for Appellant–Respondent.

Perry D. Shilts, Haller & Colvin, P.C., Fort Wayne, for Appellee–Petitioner.

## OPINION

HOFFMAN, Judge.

Appellant-respondent Steven C. Troyer appeals the portion of the trial court's determination which found valid an antenuptial agreement executed by Steven and appellee-petitioner T. Dilynn Troyer, but found that the principal asset, stock in a family business, Steven attempted to protect from the marital estate had been sold during the marriage and the proceeds were not protected. The court found controlling a provision in the agreement allowing " '[a]ny and all property, real, personal, or mixed, tangible and intangible, of every kind or character, coming to either of the parties of this Agreement during their marriage, shall be considered a marital asset.' " Evidence pertinent to the appeal is recited below.

As determined by the trial court, in late January 1982, Steven asked his attorney to draft an antenuptial agreement. After some objections to language in the agreement by Dilynn, the agreement was revised and executed on February 19, 1982, one day prior to Steven and Dilynn's marriage. The agreement recited and the drafting attorney testified that the principal purpose of the agreement was to protect Steven's interest in Troyer Poultry stock. In January 1988, the family sold the business. Steven sold his shares in the business.

In October 1993, Dilynn filed her petition for dissolution of the marriage. Matters including provisional orders, custody of the parties' two minor children, visitation and support were contested. Also contested was the efficacy of the antenuptial agreement executed by the parties. After Dilynn conceded that the agreement was valid, the interpretation of its provisions remained at issue.

In May 1995, the trial court entered an order indicating trial on issues other than property would move forward. In pertinent part the order stated:

> Court determines that what assets will be before the Court for distribution in the marital estate will be determined by an interpretation of the pre-marital Antenuptial Agreement entered into between the parties on February 19, 1982. Court defers trial of property issues in the case until the Court makes a legal ruling on the interpretation of the Antenuptial Agreement. Parties to file Proposed Findings of Fact and Conclusions of Law regarding what property is covered by the Antenuptial Agreement on or before June 30, 1995.

Court acknowledging that there are substantial assets of the parties and that regardless of how the Court rules on its interpretation, the party against whom the ruling is made will be allowed, if they desire, to take an interlocutory appeal regarding the Court's ruling and the property issue to be resolved after the Indiana Court of Appeals rules on the Court's ruling of the Antenuptial Agreement.

On June 27, 1995, the trial court entered an order dissolving the parties' marriage. The order awarded custody, determined visitation and support. Specifically reserved were issues of the property division "for further evidentiary hearing."

On June 30, 1995, Steven filed his proposed findings of fact and conclusions of law accompanied by a memorandum in support. The proposed findings and conclusions addressed *inter alia* interpretation of the antenuptial agreement. Also on June 30, 1995, Dilynn filed her proposed findings of fact and conclusions of law, together with a memorandum in support thereof. Dilynn's filings also addressed interpretation of the antenuptial agreement. Further, on June 30, 1995, Dilynn filed her motion requesting the court consider published depositions and exhibits.

On July 14, 1995, Steven filed his motion to reconsider or in the alternative motion to correct errors directed at the dissolution and custody decree. Dilynn filed a motion to produce documents related to marital assets and a petition for provisional orders in late July 1995. Pursuant to an emergency petition by Dilynn regarding visitation, a hearing was held in September 1995. The court ordered supervised visitation, granted Steven's motion to quash a subpoena duces tecum directed to his current account balances, and denied Steven's motion to quash the requests for information regarding an asset held during the marriage. The request for additional provisional orders was taken under advisement.

In October 1995, Steven filed "Husband's Supplemental Memorandum of Law and Arguments," together with affidavits in support regarding the distribution of marital property and interpretation of the antenuptial agreement. On October 19, 1995, Steven

filed his amended findings of fact and conclusions of law. On November 3, 1995, Dilynn filed her response to Steven's supplemental memorandum of law and amended proposed findings of fact and conclusions of law.

On January 2, 1996, the trial court entered its findings of fact and conclusions of law. The trial court determined that a portion of the antenuptial agreement is ambiguous and that the agreement protected the stock itself but made no provisions for tracing proceeds of the stock if it was sold during the marriage. As noted above, the trial court then found controlling the provision within the agreement which provided that assets acquired during the marriage would be considered marital assets. The trial court's conclusions are:

1. The Antenuptial Agreement of the parties, which was executed on February 19, 1982, one day prior to their marriage on February 20, 1982, is a valid Antenuptial Agreement as between the parties.

2. Steve directed his attorney to draft an Antenuptial Agreement and to make revisions in that initial draft. This drafting, along with the revisions, [led] to the preparation and execution of the Antenuptial Agreement signed by the parties on February 19, 1982, one day before their marriage.

3. The intent of the parties, at the time of the execution of the agreement, which intent is relevant because of.the ambiguity within the Antenuptial Agreement itself, is the basis of the Court's decision and the expressed intent of the parties is basically agreed to by the parties in their respective depositions.

4. The language within paragraphs 4 and 5 of the executed Antenuptial Agreement is clear and unambiguous. 'Any and all property, real, personal, or mixed, tangible and intangible, of every kind or character, coming to either of the parties of this Agreement during their marriage, shall be considered a marital asset ...' except Steve's interest in Troyer's Poultry, Inc. stock.

5. With regard to the Troyer's Poultry, Inc. stock, Dilynn and Steve acknowledged

'that the principal purpose of this Agreement' was to protect and preserve 'all of the right, title, claim, or interest which Steve' had or might acquire in *stock* in Troyer's Poultry, Inc. for himself, even in the event of a divorce or dissolution. Steve did not want Dilynn to be a stockholder in the family owned business in the event of a divorce or dissolution.

6. Following January, 1988, Steve no longer had any interest in Troyer's Poultry, Inc. stock or in any subsidiary, sister, parent or related corporation or enterprise.

7. Paragraph 5 of the executed Antenuptial Agreement makes no reference to the proceeds from the potential sale of Steve's interest in the Troyer's Poultry, Inc. stock at some indefinite date in the future. While drafting the Antenuptial Agreement, the attorney had no discussions with the parties about any stock sale proceeds (Lord Depo., p. 27).

8. The executed Antenuptial Agreement of the parties makes no provision for the tracing of proceeds from the sale of Steve's stock in Troyer's Poultry, Inc., as the declared principal purpose of the Agreement was to 'protect and preserve' Steve's interest in the Troyer's poultry, Inc. stock itself, without reference or discussion concerning proceeds associated with a later sale of that stock.

9. The Court now finds that paragraph 4 of the executed Antenuptial Agreement of the parties is valid and will control the Court's determination of the distribution of the parties' net marital estate according to Ind.Code 31–1–11.5–11. [Emphasis in original.]

On March 4, 1996, Steven filed his motion to certify the ruling on the antenuptial agreement as a final judgment. That day the trial court entered an order which stated in pertinent part:

1. That there is no just reason for delay.

2. That the entry of judgment as to less than all of the issues, claims or parties should be made.

3. That said Motion should be, and it is hereby granted.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that the Findings of Fact and Conclusions of Law entered January 2, 1996 by this Court are hereby entered and certified as a final judgment and that entry of said final judgment as to less than all of the issues, claims, or parties is hereby made and directed.

This appeal ensued. Other facts will be added as necessary to resolution of the issues.

■ At the outset, it must be determined whether the proceedings have vested this Court with jurisdiction over the appeal. Appeal of an interlocutory order, one which disposes of less than all claims, rights and liabilities of the parties, may be accomplished through either Ind.Trial Rule 54(B) or Ind.Appellate Rule 4(B)(6). *See Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 100 (Ind.Ct.App.1995); *but see also,* Ind. Appellate Rule 4(B)(1–5) (listing interlocutory appeals which may be taken as a matter of right).

■ Pursuant to T.R. 54(B), a judgment or order which adjudicates fewer than all of the claims, rights and liabilities of fewer than all of the parties in an action is interlocutory, not final, and is not appealable unless "the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment...." *Chesterfield,* 655 N.E.2d at 100, quoting T.R. 54(B).

> The clear purpose of the rule is to avoid piecemeal litigation and appeal of the various issues involved in a case. The rule also protects against the appeal of orders that are not final, thereby preserving judicial economy. [Citations omitted.]

*Id.* at 100.

Noting the relevance of decisions under Rule 54(b) of the Federal Rules of Civil Procedure, this Court in *Legg v. O'Connor,* 557 N.E.2d 675, 676 (Ind.Ct.App.1990) stated:

> To be certifiable under Rule 54(b) of the Federal Rules of Civil Procedure, a judgment must possess the requisite degree of finality, and must dispose of at least a

single substantive claim. T.R. 54(B) does not apply to a single claim action. A claim asserts only one legal right growing out of a single transaction or series of related transactions. A single claim resting on multiple theories or a single claim with an alternative request for relief are not final judgments which a trial court may certify for appeal.

An appellate court is not bound by the trial court's determination as to whether a case presents multiple claims. The trial court's certification is subject to review for abuse of discretion. [Citations omitted.]

*Id.*

Here, the parties' dissolution has been highly contentious regarding all matters including custody, visitation, and property distribution. Within its rulings, as outlined above, the trial court has explicitly noted that its ruling on the property division hinges upon interpretation of the antenuptial agreement. While the circumstances of the present case reveal that judicial economy may be served best by a final determination of the provisions of the antenuptial agreement, upon which the property distribution will be built, it is unclear whether excising one aspect of the property division can serve as an appropriate final appealable order even when certified as such. On one hand, the trial court is attempting to conserve judicial effort by ensuring that the ruling on the antenuptial agreement is sound before moving on to the task of determining all marital assets and then deciding their proper division. On the other hand, it is apparent that each aspect of the property division could be pursued as its own cause of action leaving this Court in the position of addressing the issues piecemeal, as cautioned against in *Chesterfield*, and at the same time consuming any time saved by jurists and the parties.

In the present case, as in *Legg*, the trial court's judgment was certified under T.R. 54(B) and, as we noted in *Legg*, we are not bound by the certification where we determine that the case actually presents multiple claims. We distinguish this case, brought under T.R. 54(B), where the trial court and this Court are asked to interpret the meaning of a particular antenuptial agreement, from a permissive interlocutory appeal, brought under App.R. 4(B)(6), where the issue certified is not confined to the case at hand but presents a substantial question of law. *See Pardieck v. Pardieck*, 676 N.E.2d 359 (Ind.Ct.App.1997) (holding no general duty of good faith and reasonableness exception to enforcement of antenuptial agreement).

In *Legg*, this Court dismissed an appeal regarding one aspect of a single negligence claim. The *Legg* court noted, "[t]he trial court's order was interlocutory despite the certification, and as such is subject to revision at any time prior to entry of final judgment." *Legg*, 557 N.E.2d at 677. Such is the case here where substantial issues of property division remain.[1] The trial court's ruling on the meaning of the antenuptial agreement was not a final judgment that could be certified and appealed under T.R. 54(B). The appeal must be dismissed.[2]

BAKER and NAJAM, JJ., concur.

---

1. For example, Dilynn has raised an issue regarding depletion of marital assets.

2. It is also noteworthy that, had the appeal been justiciable, Steven did not request certification of the January 2, 1995 order until March 4, 1995.

T.R. 54(B) does not specify a time requirement to request certification as a final appealable order. However, one may presume that a request for a T.R. 54(B) certification cannot be delayed while awaiting the outcome of other rulings subsequent to the one the party wishes to assert as error.